[Cite as *In re N.Z.*, 2014-Ohio-157.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

IN THE MATTER OF:                    :        **O P I N I O N**
N.Z., DELINQUENT CHILD.
                                     :
                                              **CASE NO. 2012-L-100**
                                     :

                                     :


Appeal from the Lake County Court of Common Pleas, Juvenile Division.
Case No. 2009 DL 1840.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, State of Ohio).

*Timothy Young*, Ohio Public Defender, and *Sheryl A. Trzaska*, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH 43215-9308 (For Appellant, N.Z.).


TIMOTHY P. CANNON, P.J.

{¶1} N.Z. appeals from the August 3, 2012 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, classifying him as a Tier I sex offender. N.Z. contends that (1) the juvenile court lacked jurisdiction to make the classification due to the passage of time; (2) the classification violated his right against double jeopardy; and (3) the classification is unconstitutional because the required registration period extends beyond his 21st birthday.

{¶2} On September 25, 2009, a complaint was filed against N.Z., alleging him to be delinquent. N.Z. was charged with rape, in violation of R.C. 2907.02(A)(1), and gross sexual imposition, in violation of R.C. 2907.05. The Lake County Court of Common Pleas, Juvenile Division, conducted separate trials on each count.

{¶3} On December 9, 2009, following the first trial, N.Z. was found delinquent on Count 1 for committing the offense of rape between March 1, 2007, and August 30, 2008. The exact date of the offense was not specified. Following the second trial, on January 27, 2010, N.Z. was found delinquent on Count 2 for committing the offense of gross sexual imposition between July 1, 2008, and August 30, 2008. Again, the exact date of the offense was not specified, but it is clear N.Z. was either 14 or 15 years old at the time of this offense.

{¶4} N.Z. was committed to the Department of Youth Services ("DYS") for a minimum of six months on each count with the maximum not to exceed his attaining 21 years of age. By judgment entered on March 25, 2010, N.Z. was also classified as a Tier III sex offender, and his commitment pursuant to Count 2 was suspended. N.Z. was paroled on December 8, 2010.

{¶5} N.Z. timely appealed the finding of delinquency on Count 1 and his consequent sex offender classification. *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, 2010-L-035, & 2010-L-041, 2011-Ohio-6845. On January 3, 2012, this court affirmed the juvenile court's determination of delinquency. *Id.* at ¶116. However, this court vacated N.Z.'s sex offender classification because the record did not reflect whether, at the time of the offense, N.Z. was 13 years old and therefore not subject to classification, or 14 years old and subject to classification. *Id.* at ¶112-114, ¶116. N.Z. was born on

August 18, 1993. Therefore, his 14th birthday occurred on August 18, 2007. It was not clear from the record whether the rape offense underlying Count 1 occurred before or after that date. The matter was remanded to the juvenile court for a redetermination of whether N.Z. can be designated as a juvenile offender registrant and therefore subject to sex offender classification and the attendant registration requirements. *Id.* at ¶116.

{¶6} The juvenile court held a reclassification hearing on February 8, 2012. On February 9, 2012, the state moved the juvenile court to classify N.Z. as a sex offender on the basis of Count 2. As the record reflects, N.Z. was at least 14 years old when he committed the offense in Count 2. Thus, N.Z. was clearly subject to discretionary classification as a result of the finding on that count. *See* R.C. 2152.83(B). In a judgment entry filed on February 10, 2012, the juvenile court stated it could not determine N.Z.'s age at the time of the Count 1 rape offense. The juvenile court therefore could not use the finding on Count 1 as the basis for classification. A hearing was set for June 26, 2012, on the issue of reclassification under Count 2 and later continued until August 3, 2012.

{¶7} In the interim, N.Z.'s parole officer moved to impose the previously-suspended commitment, alleging that N.Z. had violated his parole. On August 3, 2012, the juvenile court held a hearing on both motions. N.Z. was reclassified a Tier I sex offender; he was 18 years old at that time. N.Z. timely appealed his Tier I reclassification, assigning three errors.

{¶8} N.Z.'s first assignment of error states:

> The juvenile court committed plain error when it classified [N.Z.] as a tier I Juvenile Offender Registrant as to Count 2 of the complaint, because it did not have jurisdiction to do so. Fourteenth

3

Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution. * * *

{¶9} In his first assignment of error, N.Z. argues that the court lacked jurisdiction to classify N.Z. a Tier I sex offender at a reclassification hearing that took place long after N.Z.'s disposition and release from commitment. We disagree.

{¶10} N.Z. did not object to his reclassification during the hearing. Thus, N.Z. has waived all but plain error review. The Ohio Supreme Court has determined that Ohio's sex offender registration laws are punitive in nature, not remedial, even as they apply to delinquency matters. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶14-15, 19-20. Therefore, we apply the standard of review for plain error in criminal matters.

{¶11} Plain error may be noticed under exceptional circumstances where necessary to prevent a miscarriage of justice even though the error was never brought to the attention of the trial court. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To constitute plain error, an error must be an obvious deviation from a legal rule that affected the outcome. *See State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶12} The question here is whether, under the unique facts and procedural posture of this case, the juvenile court had jurisdiction to classify N.Z. in the manner it did pursuant to the adjudication of delinquency under Count 2. We determine that it did.

{¶13} N.Z.'s classification was based on the factors set forth in R.C. 2152.83(D)(1)-(6). The original Tier III classification was vacated upon remand to the juvenile court as it was unable to determine whether the Count 1 offense occurred before or after N.Z. turned 14. However, it does not follow that the juvenile court did not

4

have jurisdiction to consider an appropriate, alternative classification after remand from this court. In fact, it was required to do so.

{¶14} Initially, at a hearing on March 19, 2010, N.Z. was classified a Tier III sex offender on the basis of the finding of delinquency on Count 1 and Count 2. All parties to that proceeding acknowledged that the classification was not mandatory: the juvenile court had discretion as to which tier N.Z. should be classified and whether he should be subject to community notification requirements.

{¶15} At this hearing, N.Z. was sentenced to DYS. He was subsequently paroled. While on parole, the juvenile court conducted periodic review hearings to monitor N.Z. and the conditions of his parole. On July 10, 2012, his parole officer filed in the juvenile court a Motion to Impose Dispositions as a result of N.Z.'s violation of terms of his community control and/or probation.

{¶16} The juvenile court, pursuant to our remand, found it was unable to determine N.Z.'s age at the time of the offense in Count 1. Given that finding, the state requested a hearing to determine a proper reclassification for N.Z. On August 3, 2012, the court conducted a hearing on the motion to impose and on the sex offender classification. The record reflects the parties' understanding that the court had discretion to assess which classification was proper. It was at this hearing that the court reclassified N.Z. as a Tier 1 offender based on the factors set forth in R.C. 2152.83(D)(1)-(6). The juvenile court also revoked N.Z.'s parole and, on August 6, 2012, issued an order directing him to be returned to DYS for a minimum of 90 days.

{¶17} Unlike adult sex offender classifications, juvenile classifications for offenses committed before the juvenile offender attained the age of 16 are neither

automatic nor necessarily mandatory.[1]  The tier of classification is also not dictated by the specific offense(s).  *See* R.C. 2152.83(B)(1); R.C. 2950.01(E)(2)-(4); R.C. 2950.01(F)(3)-(5); R.C. 2950.01(G)(3)-(5).  In deciding which classification, if any, is appropriate, the juvenile court may consider all relevant information, not just the specific statutory offense for which the juvenile was adjudicated delinquent.  *See In re Antwon C.*, 1st Dist. Hamilton No. C-080847, 182 Ohio App.3d 237, 2009-Ohio-2567, ¶13-18. Therefore, the classification of such an offender is personal to the offender, not derivative of the offense.  The offense is only one of many pieces of relevant information the juvenile court may consider, and the level of offense is not determinative of the level of classification.

{¶18} The circumstances that the juvenile court considered at N.Z.'s initial classification hearing were N.Z.'s delinquency for having committed the offense of rape; N.Z.'s delinquency for having committed the offense of gross sexual imposition; N.Z. victimized more than one person; N.Z. committed multiple offenses over a period of time; N.Z.'s lack of remorse; N.Z.'s psychological assessment; and N.Z.'s prior juvenile record.  Although the juvenile court focused on Count 1 (rape) because it was the most serious offense N.Z. committed, the record reflects the classification was not derived solely from Count 1, as the juvenile court considered the aforementioned circumstances.

{¶19} At N.Z.'s first hearing after our remand, the juvenile court determined that N.Z. may have been 13 years old at the time of the offense in Count 1.  Thus, the

---

1. Classification of a child aged 14, 15, 16, or 17 years old at the time of the offense *is* mandatory if the court determines that the child was previously adjudicated a delinquent for committing a sexually-oriented offense.  *See* R.C. 2152.82(A).

juvenile court declined to consider Count 1 as a circumstance relevant to N.Z.'s potential reclassification. At the second hearing after the state requested reclassification, the juvenile court reclassified N.Z. a Tier I sex offender on the basis of all the aforementioned circumstances, except N.Z.'s delinquency on Count 1.

{¶20} It is within the juvenile court's discretion to initially classify N.Z. a Tier III offender even without considering Count 1 and within its discretion not to classify N.Z. at all even considering Count 1. The classification of a juvenile offender is based on all relevant information, not on a single offense.

{¶21} Thus, N.Z.'s second hearing, wherein he was reclassified a Tier I sex offender, did not result in an initial classification on the basis of Count 2. Rather, it resulted in a reclassification, wherein the juvenile court no longer considered Count 1. In so doing, the juvenile court exercised an abundance of caution in N.Z.'s favor. An offense committed prior to a juvenile offender attaining 14 years of age cannot be the necessary predicate crime for purposes of sex offender classification. However, nothing in the statutes or case law prohibits a juvenile court from considering, as relevant to the classification, the fact that a juvenile has also been adjudicated delinquent for committing a sexually-oriented offense prior to reaching 14 years of age.

{¶22} N.Z. relies on *In re McAllister* for the proposition that a trial court's jurisdiction to classify terminates once the two time periods specified in R.C. 2152.83(B)(1) have passed, i.e., the time of disposition and the time of release from a secure facility. 5th Dist. Stark No. 2006-CA-00073, 2006-Ohio-5554, ¶10. However, in *In re McAllister*, the state's motion for a classification hearing, the hearing, and the classification all occurred over one year after the defendant was released from custody.

7

*Id.* at ¶9. In this case, the state sought classification, an initial hearing was held, and N.Z. was classified at the time of his disposition. The timing of this hearing was upheld on appeal and is the law of this case. The later hearing occurred only because N.Z.'s appeal was successful, in that clarification of the classification order was necessary.

**{¶23}** Following our remand, the matter was met with delays and continuances, some of which were caused by N.Z., and the reclassification hearing did not take place until August, 3, 2012.

**{¶24}** N.Z. further points to *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697. Jean-Baptiste was committed to DYS and classified as a sex offender. *Id.* at ¶3. His classification was vacated on appeal. *Id.* at ¶4. Jean-Baptiste sought a writ of prohibition to avoid being reclassified by the juvenile trial court. As N.Z. points out, the Ohio Supreme Court granted the writ holding that the trial court unambiguously lacked jurisdiction to proceed with the second classification hearing after Jean-Baptiste's 21st birthday. *State ex rel. Jean-Baptiste*, *supra*, at ¶28, ¶32 ("the juvenile court lacks jurisdiction to classify Jean-Baptiste, who is now no longer a 'child' under the applicable statute"). A person who is adjudicated delinquent prior to attaining 18 years of age remains a child "for purposes of that jurisdiction related to that adjudication" until they attain 21 years of age. R.C. 2152.02(C)(6).

**{¶25}** Similarly, in *In re C.W.*, 4th Dist. Adams No. 11-CA-918, 2013-Ohio-2483, the Fourth District reversed its decision in *In re A.R.R.*, 4th Dist. Ross No. 10-CA-3159, 2011-Ohio-1186, which had remanded an adjudicated delinquent for reclassification after he turned 21. *In re C.W.* at ¶17 ("[*In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961] prohibits a juvenile court from exercising jurisdiction under R.C. 2152.02(C)(6) on

remand if the child has attained the age of 21 where the original adjudication occurred prior [to] 18").

**{¶26}** The holdings in *State ex rel. Jean-Baptiste*, *In re C.W.*, and *In re J.V.*, do not require a finding that the juvenile court was without jurisdiction in this case. N.Z. was adjudicated delinquent before he turned 18, but he had not attained the age of 21 at the time of his reclassification and was therefore still subject to the jurisdiction of the juvenile court.

**{¶27}** Finally, N.Z. cites *In re Mudrick*, 5th Dist. Stark No 2007-CA-00038, 2007-Ohio-6800, in which the Fifth District held that the trial court did not err in determining it lacked jurisdiction to conduct a classification hearing one and one-half years after the defendant's release from a secure facility. *Id*. at ¶16. In *In re Mudrick*, at the time of the defendant's disposition, the trial court ordered that the defendant be classified at a hearing to be scheduled prior to his release. *Id*. at ¶3. Nonetheless, the defendant was released to a non-secure facility, and a classification hearing was not held. *Id*. at ¶4, ¶16. When the state then moved for a hearing, the trial court dismissed the matter for want of jurisdiction because the time periods for classification—disposition and release—had lapsed. *Id*. at ¶7, ¶16. Thus, at issue in *In re Mudrick* was an original classification hearing sought outside the permissible time frame. In this case, an original classification hearing was held within the permissible time frame. *In re Mudrick* is thus inapplicable.

**{¶28}** The cases cited by N.Z. rely either on a delay preceding the original classification or on statutory language granting juvenile courts jurisdiction over minors adjudicated delinquent only until such individuals attain the age of 21. Though N.Z.'s

9

initial classification was vacated and the matter remanded, N.Z. was properly reclassified, and he had not attained the age of 21 prior to his reclassification. We hold that where the original classification hearing was timely held, the juvenile court has jurisdiction to reclassify the offender on remand as long as the offender has not attained age 21.

**{¶29}** N.Z.'s first assignment of error is without merit.

**{¶30}** N.Z.'s second assignment of error states:

> [N.Z.]'s classification as a tier I juvenile offender violates his right under the Double Jeopardy Clause to be protected from multiple punishments for the same offense in successive proceedings. Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. * * *

**{¶31}** In his second assignment of error, N.Z. argues that the juvenile court subjected him to double jeopardy by classifying him a Tier I sex offender at a hearing subsequent to his disposition. We disagree.

**{¶32}** N.Z. relies primarily on *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, in which the Ohio Supreme Court held that the trial court lacked authority to re-open sentencing to classify the defendant a sex offender more than one year after it imposed its original sentence. *Id*. at ¶4. The Supreme Court further stated that "because sex-offender registration is now punitive in nature, double-jeopardy protections barred the court from subsequently classifying Raber as a Tier I sex offender at a new proceeding held more than a year after its original sentence." *Id*. We note, however, that in *Raber* the trial court re-opened its own case and classified the defendant at a second sentencing hearing; it had already imposed a sentence that was never vacated by an appellate court. *Raber*, *supra*, ¶9.

10

**{¶33}** As recently stated in *State v. Marlow*, 12th Dist. No. CA2012-07-051, 2013-Ohio-778: "[t]he Ohio Supreme Court did not hold in *Raber* that every sex offender classification or reclassification under S.B. 10 inevitably violates the Double Jeopardy Clauses of the state and federal constitutions." *Id.* at ¶29. Rather, the Double Jeopardy clause "protects only against the imposition of multiple criminal punishments for the same offense, * * * and then only when such occurs in successive proceedings." *Id.* at ¶27.

**{¶34}** In *In re N.Z.*, this court sustained one of appellant's assignments of error concerning his Tier III classification. *In re N.Z., supra*, ¶116. On remand from this court, the juvenile court did not conduct a second sentencing hearing of its own accord. It conducted a reclassification hearing pursuant to our order, which vacated the original classification. Multiple criminal punishments for the same offense have therefore not been imposed.

**{¶35}** N.Z.'s second assignment of error is without merit.

**{¶36}** N.Z.'s third assignment of error states:

> The Lake County Juvenile Court erred when it classified [N.Z.] as a tier I juvenile offender registrant because it imposed a punitive sanction that extends beyond the age jurisdiction of the juvenile court. Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution. * * *

**{¶37}** N.Z. argues that the juvenile court erred in imposing registration requirements that continue beyond N.Z.'s 21st birthday because juvenile dispositions end when the juvenile turns 21 and is thus no longer subject to the jurisdiction of the juvenile court. We disagree.

11

{¶38} First, both R.C. 2152.22(A) and R.C. 2152.83(E) specifically exempt sex offender classification proceedings from the general rule that dispositions end when the juvenile turns 21. Dispositional orders of Ohio juvenile courts generally continue "for a period that is designated by the court in its order, until terminated or modified by the court or until the child attains twenty-one years of age." R.C. 2152.22(A). However, this general rule yields when another "provision of law [ ] specifies a different duration for a dispositional order." *Id.* Such provisions of law are implicated in sex offender registration cases. Dispositional orders requiring juvenile sex offenders to register "shall remain in effect for the period of time specified in section 2950.07 of the Revised Code [subject to certain provisions allowing for modification and termination]." R.C. 2152.83(E). Furthermore, "[t]he child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division." *Id.* Thus, a juvenile classified as a Tier I sex offender, who is subject to registration for 10 years under R.C. 2950.07(B)(3), must register for 10 years—even if such registration period continues beyond the juvenile's 21st birthday—unless the disposition is modified or terminated.

{¶39} Second, we note that N.Z.'s reliance on *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, is misplaced. S.B. 10 took effect on January 1, 2008. Among other things, it created a new tier system with additional reporting requirements and provided for automatic classification of offenders based on the offense committed. *Williams* held that S.B. 10, because it has punitive elements, is unconstitutional when applied retroactively to sex offenders whose crimes were committed before that law took effect. *See id.* at ¶21. *Williams* involved an adult defendant and has no relevance

12

with regard to whether a juvenile court may impose a classification that requires a juvenile defendant to continue sex offender registration after the age of 21. Furthermore, N.Z.'s Tier I sex offender classification is based on an offense that occurred during the summer of 2008. Thus, there is no issue regarding retroactive punishment or ex post facto laws in this case.

{¶40} Third, N.Z.'s reliance on *In re C.P.*, 131 Ohio St. 3d 513, 2012-Ohio-1446, is also misplaced.

{¶41} In *In re C.P.*, the Ohio Supreme Court held that R.C. 2152.86 was unconstitutional for two reasons. The Court held that classification requiring lifetime registration and disclosure of sex offender status in a public, internet accessible database amounted to cruel and unusual punishment when applied to juveniles. *Id.* at ¶86. N.Z. is not subject to lifetime registration in a public database. The Court further held that the procedure specified in R.C. 2152.86—i.e., the automatic imposition of sex offender registration requirements without the benefit of a judicial hearing—violated due process. N.Z. was not subject to automatic classification. N.Z. was classified by a judge following a hearing, and he also had the benefit of an appeal that resulted in his reclassification to a lower tier.

{¶42} On the facts before us, we are guided by the decision in *State ex rel. N.A. v. Cross*, 125 Ohio St.3d 6, 2010-Ohio-1471. In that case, N.A. was adjudicated delinquent for two counts of rape that occurred when he was 16 years old. *Id.* at ¶2. The appellate court reversed and remanded for rehearing, as the adjudicatory hearing was not recorded in compliance with Juv.R. 37(A). *Id.* at ¶3. The juvenile court commenced the adjudicatory rehearing before N.A. reached 21 years of age, but

continued it until after his 21st birthday. *Id.* at ¶4. N.A. sought a writ of prohibition on the basis that the juvenile court had no power to conduct a trial on the issue of his delinquency after he reached the age of 21. *Id.* at ¶5. The court of appeals dismissed N.A.'s petition, and N.A. appealed to the Supreme Court of Ohio. *Id.* at ¶5-6.

{¶43} The Supreme Court affirmed the judgment of the court of appeals. *Id.* at ¶15. It noted that the juvenile court's jurisdiction was premised on the fact that N.A. had committed the rapes prior to turning 18 years old. *Id.* at ¶10-11. Significant to this case, the Supreme Court made the following observation, at ¶13:

> Moreover, * * * even though N.A. is now over 21 years old, the delinquency proceeding is still important because if he is adjudicated a delinquent child based on the rape offenses, N.A. would still be subject to the juvenile-offender-registration provisions. *See* R.C. 2152.82(C) (if an order classifying a child as a juvenile-offender registrant is issued, 'the child's attainment of eighteen or twenty-one years of age does not affect or terminate the order'); *see also* R.C. 2151.23(A)(15) (juvenile court has exclusive original jurisdiction to 'conduct the hearings, and to make the determinations, adjudications, and orders authorized or required under sections 2152.82 to 2152.86 (* * *) of the Revised Code regarding a child who has been adjudicated a delinquent child').

{¶44} Admittedly, *State ex rel. N.A.* was a writ proceeding, not an appeal, and was decided before the Ohio Supreme Court found the provisions of S.B. 10 punitive in *Williams*, *supra*, at ¶20. Nonetheless, *N.A.* indicates there is no per se prohibition against Ohio juvenile courts imposing a registration requirement that extends beyond a person's attainment of age 21. *State ex rel. N.A.*, *supra*, at ¶12-13. *In re C.P.* contains an extensive analysis concerning the manner in which former R.C. 2152.86 violated due process rights–i.e., by undercutting the procedural safeguards otherwise inherent in the juvenile justice system. *In re C.P.*, *supra*, at ¶70-85.

14

{¶45} N.Z. does not point to any procedural safeguards that are undermined by a juvenile's classification as a sex offender, the requirements of which continue after the attainment of age 21. Indeed, the fact that juvenile courts may review previous sex offender classifications and dispense with them indicates that juvenile sex offenders receive greater due process protection than adult sex offenders. *See* R.C. 2152.84(A)(2)(b) and R.C. 2152.85(A).

{¶46} The third assignment of error is without merit.

{¶47} N.Z.'s assignments of error being without merit, the judgment of the Lake County Court of Common Pleas, Juvenile Division, reclassifying appellant a Tier I sex offender is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with Concurring/Dissenting Opinion.

{¶48} I concur with the majority's disposition of the third assignment of error on the basis of R.C. 2152.22(A) and R.C. 2152.83(E), as well as the Supreme Court of Ohio's decision in *State ex rel. N.A.*, *supra*. I respectfully dissent regarding the majority's disposition of the first and second assignments of error as I would find each has merit. On this basis, I would vacate the trial court's designation of N.Z. as a Tier I sex offender.

{¶49} Under his first assignment of error, N.Z. argues that the trial court failed to meet the time constraints imposed by R.C. 2152.83(B)(1), which mandates that juvenile courts, when making a sex offender classification, do so at the time of disposition, or upon the juvenile's release from a secure facility. I agree.

{¶50} In this case, disposition was made at the March 19, 2010 hearing, formalized in the March 25, 2010 judgment entry, when the trial court classified N.Z. as a Tier III sex offender on the rape count, and suspended his disposition regarding the gross sexual imposition, without making a sex offender classification regarding it. N.Z. was released from the custody of DYS December 8, 2010 – some 20 months before his classification as a Tier I sex offender on the gross sexual imposition. Classifying him so long after the disposition, and his release from custody, simply does not comply with R.C. 2152.83(B)(1).

{¶51} Once the time periods specified by the statute lapse, the juvenile court is without jurisdiction to conduct a sex offender classification hearing. *Mudrick*, *supra*, at ¶16. Here, the trial court made its disposition in its March 25, 2010 judgment entry. That judgment entry was final and appealable when made, as appears from this court's opinion in *N.Z.*, 2011-Ohio-6845. If the state was unsatisfied with the disposition made regarding the gross sexual imposition, it could have filed a cross appeal. It did not; and N.Z. was released from a secure facility in December 2010. The Supreme Court of Ohio has indicated that sex offender classifications made upon a juvenile's release from a secure facility must be prompt, and cannot be delayed. *State ex rel. Jean-Baptiste*, *supra*, at ¶28. Again, the state could have moved for a sex offender classification

16

hearing on the gross sexual imposition when N.Z. was released from the custody of DYS. It did not.

**{¶52}** The majority reasons that the instant appeal stems from a *reclassification* hearing, mandated by this court in *N.Z.*, 2011-Ohio-6845, thus allowing the trial court to classify N.Z. regarding the gross sexual imposition. I respectfully disagree. On the first appeal, this court remanded only for purposes of determining N.Z.'s age at the time he committed the rape and consequently, whether he could be classified a sex offender on that count. *Id.* at ¶112-116. The initial appeal did not concern the then non-existent classification on the gross sexual imposition.

**{¶53}** Trial courts are without jurisdiction to reconsider their own valid final judgments in criminal matters. *Raber*, *supra*, at ¶20. As the provisions of S.B. 10 are now considered criminal, punitive measures, a trial court is required to make a sex offender classification in its original judgment entry of conviction, in cases involving adults. *Id.* at ¶21. The decision that the provisions of S.B. 10 are punitive applies in juvenile proceedings as well. *In re D.J.S.*, *supra*. It follows that any sex offender classification of a juvenile must be made when the trial court enters a disposition which is final and appealable. In this case, that occurred with the March 25, 2010 judgment entry, which did not classify N.Z. regarding the gross sexual imposition. Further, the case was remanded after appeal, for the trial court to reconsider its classification of N.Z. as a Tier III offender on the rape count. The trial court held hearing on the matter February 8, 2012, and found it could not make the classification. At the February 8, 2012 hearing, the trial court again failed to make a classification regarding the gross sexual imposition. The issue was closed.

17

{¶54} By his second assignment of error, N.Z., relying on *Raber*, contends his classification as a Tier I sex offender violates his right against Double Jeopardy. The majority notes that the Double Jeopardy clause only "protects against the imposition of multiple criminal punishments for the same offense in successive proceedings." *Raber*, *supra*, at ¶24, citing *Hudson v. United States*, 522 U.S. 93, 99 (1997); *United States v. Husein*, 478 F.3d 318, 338 (6th Cir.2007). The majority then attempts to differentiate the situation in *Raber*, where the trial court held a sua sponte sex offender classification following appellant's sentencing for sexual imposition, from the instant case. *Id.* at ¶9. Again, the majority asserts the trial court, when it designated N.Z. a Tier I sex offender on the gross sexual imposition, was merely conducting a reclassification, pursuant to this court's order in *N.Z.*, 2011-Ohio-6845, and that this could not be considered, therefore, a multiple punishment for a single offense made in a separate proceeding.

{¶55} I respectfully disagree. The mandate of this court on the initial appeal was to consider N.Z.'s classification on the rape count. It had nothing to do with the gross sexual imposition. The trial court did not consider the gross sexual imposition in its February 10, 2012 journal entry formalizing the findings of the February 8, 2012 hearing on remand. The issue of whether N.Z. should be classified a sex offender on the gross sexual imposition was raised by the state, in a motion filed *after* the February 8, 2012 hearing, specifically requesting "further proceedings." I would find that N.Z.'s right to be free from Double Jeopardy has been violated.

{¶56} I concur and dissent.

18